860 F.2d 1456
 Samuel L. McDONALD; Gerald M. Smith; Rayfield Newlon;
Thomas Battle; Alan J. Bannister, and on behalf
of all other persons similarly situated, Appellees,
v.
Bill ARMONTROUT; Lee Roy Black; Donald W. Wyrick; John D.
Ashcroft, Appellants.
Samuel L. McDONALD; Gerald M. Smith; Rayfield Newlon;
Thomas Battle; Alan J. Bannister, and on behalf
of all other persons similarly situated,
Appellants,
v.
Bill ARMONTROUT; Lee Roy Black; Donald W. Wyrick; John D.
Ashcroft, Appellees.
 Nos. 87-2145, 87-2200.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1988.
Decided Nov. 9, 1988.
 
 Henry Hershel, Jefferson City, Mo., for appellants.
 Richard Sindel, Clayton, Mo., and Joel Berger, New York City, for appellees.
 Before FAGG, BOWMAN and MAGILL, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 Inmates confined under sentence of death at the Missouri State Penitentiary (Plaintiffs) prevailed in a 42 U.S.C. Sec. 1983 action alleging violations of their constitutional rights. Subsequently, the District Court[1] ordered defendant state officials (Defendants) to pay approximately $276,000 in attorney fees and expenses. Although the parties agree that it was proper to award Plaintiffs attorney fees and expenses, Defendants appeal, arguing that the fee award should have been smaller, and Plaintiffs cross-appeal, contending it should have been larger. We affirm.
 
 I.
 
 2
 This attorney fees dispute arises out of a class action suit filed in August 1985 challenging the constitutionality of conditions and practices on death row at the Missouri State Penitentiary in Jefferson City. Shortly before the suit was to go to trial, the parties reached a settlement and signed a consent decree. On January 7, 1987, the District Court approved the settlement and entered final judgment. Paragraph Twenty-eight of the consent decree obligated the parties to negotiate over fees and expenses and, if no agreement were reached, to submit the matter to the District Court. The parties failed to reach an agreement and Plaintiffs filed a motion for fees and expenses.
 
 
 3
 Plaintiffs were jointly represented in the class action by Mr. Richard Sindel of Sindel & Sindel, P.C., a law firm in Clayton, Missouri, and by Mr. Joel Berger of the NAACP Legal Defense and Educational Fund, Inc. (LDF), located in New York City. Sindel requested a total award of $153,876.62 ($151,573.79 for attorney fees, based on a rate of $150 per hour, and $2,302.83 for expenses) and Berger requested $189,339.09 ($153,720 for attorney fees, based on a rate of $225 per hour, and $35,619.09 for expenses). The District Court awarded Sindel $146,071.78 and LDF $130,696.59. The court reached these figures based on the following rates of compensation: $150 per hour for Sindel and Berger, $100 per hour for Sindel's partner, and $85 per hour for Sindel's associates; and by compensating each attorney at only "one-half of this rate for each hour of travel time." McDonald v. Armontrout, No. 85-4422-CV-C-5 (W.D.Mo. July 23, 1987).
 
 
 4
 Defendants appeal and Plaintiffs cross-appeal. Defendants present three main arguments: 1) the award should have been based on lower hourly rates; 2) the hourly rates should have been reduced for time spent monitoring compliance with the consent decree; and 3) fees should not have been awarded for time spent on an earlier habeas corpus action. Plaintiffs argue that the hourly rates should not have been reduced for travel time and that the rate applied to the work of Berger failed to reflect his special skill and experience.
 
 II.
 
 5
 The Civil Rights Attorney's Fees Awards Act of 1976 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. Sec. 1988 (1982). A reasonable fee is "one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94-1011, 94th Cong., 2d Sess. 6, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5913). Because an award of attorney fees is "uniquely [within] the district court's discretion," the scope of our review in an attorney fees dispute is limited. We will not overturn a fee award "absent an abuse of discretion or an error in implementing the governing legal standards." Wilmington v. J.I. Case Co., 793 F.2d 909, 923 (8th Cir.1986). Accord Moore v. City of Des Moines, 766 F.2d 343, 346 (8th Cir.1985), cert. denied, 474 U.S. 1060, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986). Having reviewed the record in this case, we find no abuse of discretion or error of law.
 
 A.
 1.
 
 6
 Our primary concern in an attorney fees case is whether the fee awarded is "reasonable." See Blum, 465 U.S. at 893, 104 S.Ct. at 1546; see also 42 U.S.C. Sec. 1988 ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee") (emphasis added). The Supreme Court has explained that the proper method for "determining a reasonable attorney's fee is to multiply 'the number of hours reasonably expended on the litigation times a reasonable hourly rate.' ... '[T]he resulting product [i.e., "lodestar"] is presumed to be the reasonable fee' to which counsel is entitled." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (quoting Blum, 465 U.S. at 888, 897, 104 S.Ct. at 1543, 1548) (emphasis added in Delaware Valley ). Consistent with Delaware Valley, and explicitly following Blum, the District Court set hourly rates for the attorneys' work and calculated the fee award based on those rates. The parties do not challenge the District Court's use of that method. Defendants claim, however, that the hourly rates used by the District Court in its calculations were unreasonably high. In particular, Defendants claim that the rate applied to Sindel and Berger's work should not have been $150 but a "central Missouri rate" of $80 per hour.[2]
 
 
 7
 In Blum, the Supreme Court broadly stated that awards of attorney fees under Sec. 1988 should be calculated using "market rates,"[3] and that the "requested rates [should be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 895-96, 896 n. 11, 104 S.Ct. at 1547-48, 1547 n. 11. More recently, the Court emphasized that the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)[4] should be used to set the reasonable number of hours and reasonable hourly rate components of the fee award formula.[5] Delaware Valley, 478 U.S. at 565-66, 106 S.Ct. at 3098-99. Delaware Valley, Blum, and Johnson all emphasize that the skill, experience, and reputation of counsel are key factors bearing on a rate's reasonableness. Thus, to ascertain the reasonableness of the hourly rate used by the District Court to calculate the fee award, we give considerable attention to these particular characteristics of the attorneys.
 
 
 8
 Sindel is a successful litigator with a private firm in the St. Louis area. At the time of the request for attorney fees he had over thirteen years of legal experience and was customarily billing clients for matters similar in complexity to this case at a rate of $150 per hour. Defendants do not contend that such a rate for Sindel's services was unreasonable when paid by private clients.
 
 
 9
 Sindel's regular hourly billing rate provides a useful starting point for determining a reasonable fee. We have said that where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award. See Shakopee Mdewakanton Sioux v. City of Prior Lake, 771 F.2d 1153, 1160-61 (8th Cir.1985), cert. denied, 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986). This is consistent with Blum, for "in most cases, billing rates reflect market rates--they provide an efficient and fair short cut for determining the market rate." Student Pub. Interest Research Group, Inc. v. AT & T Bell Laboratories, 842 F.2d 1436, 1445 (3d Cir.1988). Accord Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 652 (3d Cir.1986), vacated on other grounds, --- U.S. ----, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). We explained in Shakopee, however, that an attorney's ordinary billing rate is not conclusively "reasonable," but should be compared to the "ordinary fee 'for similar work in the community.' " Shakopee, 771 F.2d at 1160 (quoting Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir.1982) (quoting Johnson, 488 F.2d at 718)). This factor serves as a check on the reasonableness of the attorney's customary hourly rate. See Shakopee, 771 F.2d at 1160; Avalon, 689 F.2d at 140.
 
 
 10
 Bearing these factors in mind, we are unpersuaded by Defendants' argument that the District Court's use of a $150 rate for Sindel's work was unreasonable. Even assuming arguendo that Blum governs this issue, see supra n. 2, and that the relevant "community" for determining the market rate is central Missouri,[6] Defendants present no evidence that attorneys of Sindel's caliber performing work of the type involved here would be compensated at just over half Sindel's regular billing rate. Defendants cite Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) where attorney fees apparently were awarded based on a rate of $80 per hour.[7] But Defendants fail to present any evidence that the attorneys in that case were of the reputation, skill, and experience of Sindel. Further, we disagree with Defendants' contention that this case was "no more complicated" than Safley. Safley was a First and Fourteenth Amendment action involving challenges to two correctional institution regulations; this case, on the other hand, had First, Sixth, Eighth, and Fourteenth Amendment issues and involved challenges to a host of conditions and practices ranging from fire safety and plumbing to religious services and visiting rights. In short, Defendants fail to show that in central Missouri comparable attorneys doing similar work would be paid much less than $150 per hour.
 
 
 11
 Because attorneys in rural areas frequently command lower fees than attorneys in urban areas, there is some argument for setting the rate for Sindel's work below his regular rate. But other Johnson factors militate against using a lower rate. First, the work of Sindel led to an order calling for substantial changes in conditions on death row and vindicated important constitutional rights. Second, Sindel took on a highly "undesirable" case by representing death row inmates, thereby exposing himself to personal and perhaps even professional contempt. And third, the rate used here is in line with other recent fee awards in successful civil rights cases in this Circuit. For example, in a fee dispute arising out of a school desegregation case in Little Rock, Arkansas, we affirmed as "reasonable" awards of $125 per hour for an LDF staff attorney who had been in practice only about six years and $200 per hour for a Washington, D.C. "cooperating" attorney who had been in practice approximately thirty years. See Little Rock School Dist. v. Pulaski County Special School Dist. No. 1, 787 F.2d 372, 374 (8th Cir.1986); D.R. at 322-46. See also infra pp. 1460-1461. We are satisfied that the District Court did not abuse its discretion in basing Sindel's fee on an hourly rate of $150.
 
 
 12
 Unlike Sindel, Berger is a salaried attorney employed by a legal aid organization.[8] He is one of this nation's leading practitioners in the field of prisoners' rights and a specialist on death row conditions. At the time Plaintiffs filed for attorney fees, he had been in practice approximately eighteen years. As they did regarding Sindel's work, Defendants contend that the appropriate hourly rate for Berger's services is $80.
 
 
 13
 Defendants cite only unreported decisions and Safley in support of their proposition that there is a mid-Missouri rate of $80 per hour that should be applied to Berger's work. We found no reason to apply that rate to Sindel's work and are no more moved to apply it to Berger's. Again, assuming arguendo that the relevant community is mid-Missouri, Defendants simply have not shown that someone of Berger's caliber doing the kind of work involved in this case would be paid $80 per hour. By contrast, there is ample evidence that Berger is one of the nation's foremost practitioners in the field of prisoners' rights and that a $150 rate is reasonable. Of particular persuasiveness is the long list of prisoner rights and death row cases in which Berger has been involved. Even several years ago one court described Berger as being "in the vanguard of prisoners' rights attorneys." Ruiz v. Estelle, 553 F.Supp. 567, 593 (S.D.Tex.1982). Comparisons to hourly rates previously received by Berger and rates provided in other recent civil rights cases suggest that the District Court acted well within its discretion in applying the rate it did. In Ruiz, for work performed by Berger during 1978-82, the court set a rate of $125, and then applied a 100% multiplier, effectively producing a rate of $250 per hour. Ruiz, 553 F.Supp. at 597. More recently, this Court affirmed as reasonable a decision awarding an experienced civil rights attorney fees for his services in a school desegregation case based on an hourly rate of $200. See Jenkins by Agyei v. Missouri, 838 F.2d 260 (8th Cir.), cert. granted in part on other issues, --- U.S. ----, 109 S.Ct. 218, 102 L.Ed.2d 209 (1988) and cert. denied, --- U.S. ----, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988). And, as mentioned supra p. 1460, we recently found "reasonable" other awards of $125 and $200 per hour.
 
 
 14
 "[T]he special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." Blum, 465 U.S. at 898, 104 S.Ct. at 1549. We do not find it unreasonable for the District Court to have concluded that a rate of $80 per hour did not adequately reflect Berger's expertise. Given Berger's skill, experience, and reputation and the rates applied in other recent civil rights cases, we cannot say that it was an abuse of discretion for the District Court to conclude that a reasonable rate for Berger's work was $150 per hour. In addition, as they did in relation to Sindel's fee, factors such as the complexity of the case and the results obtained argue against finding that the rate used by the District Court was unreasonable.
 
 2.
 
 15
 Defendants next contend that the District Court erred by "fail[ing] to reduce the hourly rate for work done for non-legal monitoring duties." Brief for Defendants at 9. They argue that a lower hourly rate should have been used because such work "cannot be considered as litigation or legal research." Id.
 
 
 16
 "Several courts have held that, in the context of [fee requests under Sec. 1988], postjudgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee." Delaware Valley, 478 U.S. at 559, 106 S.Ct. at 3095 (citing Garrity v. Sununu, 752 F.2d 727, 738-39 (1st Cir.1984); Bond v. Stanton, 630 F.2d 1231, 1233 (7th Cir.1980); Miller v. Carson, 628 F.2d 346, 348 (5th Cir.1980); Northcross v. Board of Educ., 611 F.2d 624, 637 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980)). We agree with those decisions. It may be, as Defendants argue, that courts should apply less than the full hourly rate to clerical work performed by attorneys. But the record reveals that monitoring compliance with the consent decree here involved work that was not merely clerical. Enforcement efforts included interviewing prisoners, investigating complaints, and developing a coherent picture of the conditions and practices on death row vis-a-vis the consent decree. Perserverance and a watchful eye led to the filing of a motion for contempt, appointment of a Special Probation Officer (to monitor compliance), and a Memorandum of Agreement (to supplement the consent decree). We think it was within the District Court's discretion to compensate such work at the full rate. See Bond, 630 F.2d at 1233 (plaintiffs' monitoring efforts were precisely the type of work that Congress anticipated would be remunerated under 42 U.S.C. Sec. 1988).
 
 3.
 
 17
 Defendants also argue that the District Court erred by awarding fees for work arising out of an earlier habeas corpus action. Specifically, they contend that approximately eighty-eight hours spent on the habeas case of a Missouri death row inmate prior to the filing of this suit were improperly included in the hours chargeable in this case. Plaintiffs contend that the hours in question involved investigative work that was used for and, in fact, gave rise to this case.
 
 
 18
 Section 1988 does not limit fee awards to work performed after the complaint is filed, but allows recovery of fees for time spent beforehand investigating facts and researching the viability of potential legal claims. Webb v. Dyer County Bd. of Educ., 471 U.S. 234, 250, 105 S.Ct. 1923, 1932, 85 L.Ed.2d 233 (1985) (Brennan, J., concurring in part and dissenting in part). More to the point, this Circuit has said that fees may be recovered for "research or investigation done in connection with" a related proceeding, to the extent it "proved directly relevant to the successful prosecution of the later civil rights" action. Perkins v. Cross, 728 F.2d 1099, 1100 (8th Cir.1984). Although we are mindful that Sec. 1988 is not to be used to create windfalls for attorneys, see Blum, 465 U.S. at 897, 104 S.Ct. at 1548, we do not perceive on the facts before us that any such windfalls have been created.
 
 
 19
 As did Plaintiffs here, the petitioner in the habeas action alleged that living conditions on Missouri's death row were unconstitutional. The habeas petitioner is himself a named plaintiff in the present suit. Preparations for that action were precisely what was needed for this one: tours of death row, reviews of prison records, consultations with experts and other attorneys, and research of applicable law. Such work was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." Webb, 471 U.S. at 243, 105 S.Ct. at 1928 (suggesting that prevailing civil rights litigant under Sec. 1988 may be awarded fees for a "discrete portion" of work in a related optional state administrative proceeding to the extent such work was "useful and of a type ordinarily necessary" to the successful outcome of the subsequent litigation). Indeed, work for the habeas action "obviated the need for comparable work in" this proceeding, and "contributed directly to [its] successful outcome." See Webb, 471 U.S. at 249-50, 105 S.Ct. at 1931-32 (Brennan, J., concurring in part and dissenting in part). We find that it was consistent with Webb and Perkins and within the District Court's discretion to award fees for the work in the habeas action.[9]
 
 B.
 1.
 
 20
 On cross-appeal, Plaintiffs contend that, under Blum and Delaware Valley, the hourly rate applied to Berger's work must be higher than that applied to Sindel's, "on account of Mr. Berger's special skill and experience." Brief for Plaintiffs at 14. We disagree. Berger certainly has more expertise in prisoner rights cases than does Sindel, but Blum, 465 U.S. at 898-900, 104 S.Ct. at 1548-1550, and Delaware Valley, 478 U.S. at 562-65, 106 S.Ct. at 3096-98, make clear that when determining a reasonable fee, expertise must be considered in conjunction with other factors. In this case, some of those other factors would better support a higher rate for Sindel's work than for Berger's. For example, with regard to the "undesirability" of the case, Sindel's private, for-profit, Missouri-based law firm is far more vulnerable to the ramifications of public and private displeasure with his representation of Missouri death row prisoners than is the New York-based LDF. Also, the opportunity cost was greater for Sindel than Berger, because Sindel was precluded from working for paying clients. We think it was well within the District Court's discretion to conclude that, notwithstanding their different levels of expertise, Berger and Sindel should be compensated at the same hourly rate.
 
 2.
 
 21
 Plaintiffs also argue that it was error for the District Court to reduce by fifty percent the hourly rate for attorney travel time. They assert that under Craik v. Minnesota State University Board, 738 F.2d 348 (8th Cir.1984), and Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381 (8th Cir.1987), travel time must be compensated at the same hourly rate as other work. In Craik, however, we simply said that the district court's award of fees for travel time at the full rate was not unreasonable on the particular facts there before us. Craik, 738 F.2d at 350-51. And in Rose we said that the district court should "award fees at the full hourly rate ... unless it determine[d] in its discretion that such a recovery would be unreasonable." Rose, 816 F.2d at 396 (emphasis added). Neither case holds that fees for travel time must always be awarded at the full hourly rate. The District Court concluded that the rate for travel time should be lower in this case and we do not find that decision to run afoul of applicable law or to be unreasonable.
 
 
 22
 The order of the District Court is AFFIRMED.
 
 
 
 [1]
 The Honorable Scott O. Wright, Chief United States District Judge for the Western District of Missouri
 
 
 [2]
 In their briefs, Defendants primarily focus on the rates applied to the work of Sindel and Berger, and we tailor our comments in the text accordingly. We note here, however, that Defendants have not persuaded us that the District Court applied an unreasonable rate to the work of either Sindel's partner or his associates
 
 
 [3]
 The actual holding of Blum is somewhat narrower than its language, since, on its facts, Blum applies only to salaried attorneys employed by legal aid organizations. Blum "did not decide whether the fee awards of private attorneys with an established billing rate must be calculated in the same manner" as those for salaried legal aid employees. Webb v. Maldonado, --- U.S. ----, 108 S.Ct. 480, 98 L.Ed.2d 509 (1987) (opinion on denial of cert.) (White, J., dissenting). Nevertheless, we find Blum instructive on the importance of market rates and note that market rates have been a primary focus of our inquiries to ascertain the reasonableness of fee awards. See, e.g., Shakopee Mdewakanton Sioux v. City of Prior Lake, 771 F.2d 1153, 1160 (8th Cir.1985), cert. denied, 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986); Jaquette v. Black Hawk County, 710 F.2d 455, 459 (8th Cir.1983); Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir.1982). Accordingly, we give that factor due regard in relation to the rate applied not only (as we must) to Berger's work but also Sindel's
 
 
 [4]
 Johnson called for consideration of twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19
 
 
 [5]
 Most of the Johnson factors had been used to calculate multipliers for enhancing lodestar figures, but in Delaware Valley the Supreme Court said that "most, if not all, of the relevant factors" should be considered when setting the lodestar components. Delaware Valley, 478 U.S. at 565-66, 106 S.Ct. at 3098-99
 
 
 [6]
 We are not at all convinced that central Missouri is the relevant "community" under Blum. Blum does not define "community" and the argument for an expansive reading of "community" is particularly strong in a case such as this, since Jefferson City is the capitol of the state and lawyers from throughout the state have business there. We need not decide this issue, however, because, as the text discusses, even if central Missouri is the proper community, Defendants fail to show that the rate used by the District Court is unreasonable
 
 
 [7]
 In support of their argument, Defendants also include in Appendix C to their brief several unreported district court decisions, but pursuant to Eighth Circuit Rule 8(i) we give these no consideration
 
 
 [8]
 Blum therefore unquestionably supplies the governing legal standards concerning the rate to be applied to Berger's work. See supra n. 2
 
 
 [9]
 Plaintiffs have also indicated that "counsel deleted those hours that were not directly related to the subject matter of this litigation or were not used in preparation for this case." Brief for Plaintiffs at 19