1996 SD 139

**GRAND STATE PROPERTY, INC.,**
a South Dakota Corporation,
Plaintiff and Appellant,

v.

**WOODS, FULLER, SHULTZ, & SMITH,
P.C., David C. Kroon, and James M.
Wiederrich, Defendants and Appellees.**

No. 19467.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1996.

Decided Dec. 4, 1996.

Timothy L. James of James & Reiner, Yankton, for plaintiff and appellant.

Michael J. Schaffer and Mark W. Haigh of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

JOHNSON, Circuit Judge.

[¶ 1] The circuit court granted summary judgment to Woods, Fuller, Shultz and Smith, P.C., David C. Kroon, and James M. Wiederrich on Grand State Property, Inc's complaint for legal malpractice, breach of fiduciary duty and punitive damages. We affirm.

## FACTS

[¶ 2] In January 1992, Roe entered into a purchase agreement to buy the State Theater for $50,000. He then teamed up with Hendriks on a 50/50 arrangement and decided to incorporate.

[¶ 3] Woods, Fuller, Shultz and Smith, P.C. (Woods Law Firm) had done legal work for both Roe and Hendriks on their individual projects over the years. Hendriks and Roe

contacted Woods Law Firm attorney David C. Kroon (Kroon) to set up the corporation and handle the closing. In March 1992 Hendriks and Roe formed Grand State Property, Inc., (Grand) with the assistance of Kroon. Kroon served as registered agent for Grand through January 1995. When Kroon examined the preliminary title report, he became aware of the 1910 party wall agreement involving the State Theater, Lot 4 and Lot 3 to the north, where the Phillips Centre is now located.[1] In both conference and correspondence with Hendriks and Roe, Kroon discussed the party wall agreement and the restrictions against removing or destroying the wall. Kroon told them that he thought it was a valid party wall agreement, and that the agreement also contained a light court restriction.[2] The parties closed the transaction later in March.

[¶ 4] In 1993, Donald Dunham (Dunham) purchased Lot 3 and made plans for an office building, to later be known as the Phillips Centre. Dunham contacted representatives of Woods Law Firm in 1994, including James M. Wiederrich (Wiederrich) and Kroon, concerning the law firm's interest in purchasing the property and fifty-one percent of the Phillips Centre. Kroon reviewed the title and decided that the 1910 party agreement could preclude them from building their facility. On October 26, 1994, Kroon contacted Hendriks and told him he wanted to either

buy out Grand's rights in the 1910 agreement, or cap the party wall.[3] Kroon informed Hendriks that, because of the potential conflict of interest, he could not give advice to Hendriks or Roe and that they should retain different counsel.

[¶ 5] On or about November 1, 1994, Hendriks retained attorney Joe Reed (Reed) to represent Grand. Hendriks, Roe and Reed met with Kroon and Wiederrich at a November 22 conference, where Wiederrich acted as an intermediary between the parties. Wiederrich informed Hendriks and Roe that Woods Law Firm shareholders had formed Second Century Properties, L.L.C. for the purpose of purchasing the Phillips Centre property, and desired to either purchase the State Theater or extinguish the party wall agreement.

[¶ 6] Having failed to resolve the issues at that conference, Hendriks, Woods Law Firm attorney Bill Taylor and Reed met again on or about December 9, 1994. Taylor told them their research indicated that the party wall, light court agreement was probably no longer valid nor enforceable. In the meantime, Hendriks and Roe had negotiated a deal where Grand would redeem Roe's shares for $92,500;[4] the light court provision being a factor in that decision.[5]

[¶ 7] The parties were unable to reach an agreement regarding the validity of the light

---

1. In 1910, Mary E. Hancock owned the real property now known as the State Theater, which adjoined real property owned by Marian Chase Paulton. Hancock and Paulton entered an agreement concerning the party wall between their properties which provided in part:

    [I]t is further mutually agreed by and between the parties hereto, that the said Paulton in erecting buildings on her said lot three, shall, above the first story and on the east ninety-eight feet of her said lot three, leave an open space for a court light twelve (12) feet in width, and ninety-eight feet in length between the south side of the building so erected on her said lot three, and the north line of said Hancock's lot four.

    Grand purchased the real property previously owned by Hancock in 1992. Donald A. Dunham, Jr. purchased the adjoining property previously owned by Paulton in 1993, and on October 25, 1994, the shareholders of Woods Law Firm purchased a fifty-one percent share of that property and the new construction thereon, known as the Phillips Centre.

2. If enforceable, this light court restriction, which required any building on the Phillips Centre property to be constructed with an open space or light court twelve feet in width and 98 feet in length above the first story between any buildings on the property, would prevent construction of the Phillips Centre as planned on the property.

3. A cap easement would have allowed Dunham to cap the party wall and the outside wall on the Phillips Centre to prevent moisture and the elements from penetrating the party wall.

4. According to Grand, the purchase price of Roe's shares was $25,000.00. Grand paid an additional $67,500.00 for the shares, which reflects the value of the light easement.

5. That agreement was not actually signed until December 9, 1994 and the money didn't change hands until January 1995.

easement and pending construction of the Phillips Centre. Grand sued Dunham, the Phillips Centre partners including Second Century Properties, Eleventh Street Partners and L.G. Everist, Inc., to obtain a declaratory judgment on the validity of the 1910 party wall agreement to enjoin construction of the building. The defendants also sought injunctive relief to permit the completion of the construction of the building. Neither Roe nor Hendriks sought to disqualify Woods Law Firm from representation of Second Century in the declaratory judgment action.

[¶ 8] The trial court ruled in August 1995 that the light court restriction was not an easement and no rights passed to subsequent purchasers of the property. It further held that Grand failed to meet its burden of showing that State Theater property has been or will be injured by the construction of the Phillips Centre or the absence of a light easement. Grand did not appeal this adverse decision.

[¶ 9] Grand commenced a legal malpractice action against Woods Fuller Law Firm, Kroon and Wiederrich (collectively Woods) claiming negligence and breach of fiduciary duty in their representation of Grand. The trial court determined that Grand suffered no damages and granted Woods' motion for summary judgment. It found that no genuine issue of material fact existed and that Woods was entitled to judgment as a matter of law.

## STANDARD OF REVIEW

[¶ 10] Our standard of review on a motion for summary judgment is well settled. In reviewing a grant or denial of summary judgment, we must determine:

whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Farmers & Merchants State Bank v. Teveldal,* 524 N.W.2d 874, 877 (S.D.1994)(quoting *Mooney's v. SD Dep't of Transp.,* 482 N.W.2d 43, 45 (S.D.1992)). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving par-

ty. *Id.* (citation omitted). Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper. *Id.*

*Henry v. Henry,* 534 N.W.2d 844, 846 (S.D. 1995).

## ANALYSIS AND DECISION

### [¶ 11] A. Collateral Estoppel

[¶ 12] Woods initially argues that the second action for legal malpractice, breach of fiduciary duty and punitive damages is barred by the doctrine of collateral estoppel because the trial court specifically found in the first declaratory judgment suit that Grand suffered no damages. Woods asserts that Grand's lack of injury is conclusively established for purposes of this subsequent litigation and Grand is collaterally estopped from raising that issue now. For the doctrine of collateral estoppel to apply, four tests must be met:

(1) The issue decided in the prior adjudication was identical with the one presented in the action in question;

(2) There was a final judgment on the merits;

(3) The party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and

(4) The party against whom the plea is asserted had a full and fair opportunity to litigate the issue in the prior adjudication.

*Black Hills Novelty Co., Inc. v. South Dakota Commission on Gaming,* 520 N.W.2d 70, 73 (S.D.1994), (*citing Staab v. Cameron,* 351 N.W.2d 463, 465 (S.D.1984)).

[¶ 13] Clearly, the issues decided in the declaratory judgment action are not identical to the present legal malpractice and breach of fiduciary duty action. The prior adjudication involved injunctive relief relating to the validity and enforceability of the 1910 party wall agreement. The present adjudication involves whether Woods committed legal malpractice or breached its fiduciary duty to

Grand by providing erroneous legal advice and acting in a position which conflicted with Grand's interests in the transaction. Woods' conduct and the alleged damages suffered by Grand are separate and distinct from the issues involved in the prior declaratory judgment action. Further, the parties were not afforded an opportunity to fully and fairly litigate the present issues in the prior adjudication. Thus, this action is not barred by the doctrine of collateral estoppel.

### [¶ 14] B. Legal Malpractice and Breach of Fiduciary Claims

[¶ 15] To establish legal malpractice, the plaintiff must prove:

1) the existence of an attorney-client relationship giving rise to a duty;

2) that the attorney, either by an act or a failure to act, violated or breached that duty;

3) that the attorney's breach of duty proximately caused injury to the client; and

4) that the client sustained actual injury, loss or damage.

*Haberer v. Rice*, 511 N.W.2d 279, 284 (S.D. 1994).

[¶ 16] In order to recover on a claim for breach of fiduciary duty, a plaintiff must prove:

1) that the defendant was acting as a fiduciary of the plaintiff;

2) that he breached a fiduciary duty to the plaintiff;

3) that the plaintiff incurred damages; and

4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages.

*Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo.App.1993). *See generally Rosebud Sioux Tribe v. Strain*, 432 N.W.2d 259 (S.D.1988)(describing the highly fiduciary nature of the attorney/client relationship); *See also American State Bank v. Adkins*, 458 N.W.2d 807 (S.D.1990)(discussing behavior constituting breach of fiduciary duty and necessity of proof of damages as a result of claimed breach of fiduciary duty).

[¶ 17] Grand asserts that summary judgment was inappropriate because questions of fact exist on each element of its causes of action for legal malpractice and breach of fiduciary duty. The trial court found, however, that Grand had failed to make any showing of damages suffered by Grand on either claim, and granted Woods' summary judgment motion.

[¶ 18] Proof of damages proximately caused by the attorney's negligence is a fundamental element of both causes of action. Grand asserts that it suffered a loss in redeeming shares at an inflated price, which it did in reliance on the erroneous advice given by Kroon in 1992. However, Hendriks and Roe transferred the stock after new counsel had been retained, after they'd been put on notice that the agreement may not be valid, and after they learned the information provided by Kroon in 1992 may have been erroneous. Thus, injury suffered as a result of the stock redemption was not proximately caused by wrongful acts or omissions of Woods.

[¶ 19] Grand argues that it suffered additional damages in litigation expenses in attempting to enforce the light easement which Kroon had allegedly advised was valid and for which it claims it is entitled to a return of attorney fees from Woods. However, Grand failed to raise this issue at the trial court level, rendering consideration of the issue inappropriate by this Court. *Mayrose v. Fendrich*, 347 N.W.2d 585 (S.D. 1984). Even if the issue had been raised at the trial court level, attorney fees are not generally included in the measure of recoverable damages for negligence except those fees incurred in other litigation which is necessitated by the act of the party sought to be charged. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 252 N.W.2d 107, 121 (1977). The underlying declaratory judgment action for which Grand claims entitlement to a return of attorney fees was not necessitated by the conduct or advice rendered by Woods. When Kroon had initially advised Grand that the party wall agreement existed as an exception to the title of the property, nearly three years had elapsed since Woods Law Firm represented Grand in its purchase of

the State Theater. Attorney fees incurred in the declaratory judgment action were incurred after Grand had been informed by Woods, Reed and a third attorney that the agreement was probably not valid nor enforceable. Thus, a forfeiture of attorney fees paid for services rendered for Woods' representation of Grand three years prior to the declaratory action is not appropriate.

[¶20] Grand next argues that Woods breached its fiduciary duty to it by engaging in self-dealing contrary to the interests of its client. Woods did so, Grand contends, by negotiating an agreement to purchase the Phillips Centre while representing Grand and knowing that the Phillips Center would be constructed in violation of the light easement. The relationship between Grand and Woods, inasmuch as the attorneys of Woods represented Grand, placed a fiduciary duty upon Woods. "The nature of the relationship between attorney and client is highly fiduciary. It consists of a very delicate, exacting and confidential character. It requires the highest degree of fidelity and good faith. It is a purely personal relationship, involving the highest personal trust and confidence." *Rosebud*, 432 N.W.2d at 264. However, as the trial court ruled, even though a fiduciary duty existed, Grand failed to show any damages as a result of the alleged breach of that duty. Our review of the record in the light most favorable to Grand indicates that Grand has failed to show any damages caused by the acts or omissions of Woods as a fiduciary to it. No disclosures made to Woods by Roe or Hendriks were used prejudicially against them; no confidences gained through prior representation of Grand were used by Woods which would constitute a breach of fiduciary duty; and no damages were sustained by Grand by the actions of Woods. The trial court properly ruled that Grand failed to present evidence that it sustained damages as a result of Woods' acts or omissions, and affirmance of summary judgment is proper.

[¶21] Based on the above rulings, the Court does not reach the issue of punitive damages.

[¶22] MILLER, C.J., KONENKAMP and GILBERTSON, JJ., and FITZGERALD, Circuit Judge, concur.

[¶23] JOHNSON, Circuit Judge, for SABERS, J., disqualified.

[¶24] FITZGERALD, Circuit Judge, for AMUNDSON, J., disqualified.