Robert SCHLIMGEN, Plaintiff,

v.

CITY OF RAPID CITY, and Edward McLaughlin, individually and in his official capacity as Mayor of the City of Rapid City, Defendants.

No. CIV. 98–5100–KES.

United States District Court,
D. South Dakota,
Western Division.

Feb. 4, 2000.

**1064**

Michael P. Reynolds, Michael Loos, Quinn, Day & Barker, Rapid City, SD, for Plaintiff.

Donald P. Knudsen, James S. Nelson, Gunderson, Palmer, Goodsell & Nelson, Curtis D. Ireland, Rapid City, SD, for Defendants.

## MEMORANDUM OPINION AND ORDER

SCHREIER, District Judge.

[¶ 1] Plaintiff Schlimgen filed a complaint against the City of Rapid City and its former mayor, Edward McLaughlin, claiming that he had been terminated from his job in violation of 42 U.S.C. § 1983 because he exercised his First Amendment right to freedom of speech and that he was wrongfully discharged in violation of state law. Rapid City moves for summary judgment claiming that: (1) Schlimgen failed to state a cause of action against Rapid City with respect to his 42 U.S.C. § 1983 claim; (2) Schlimgen's state law claim of wrongful termination is barred by sovereign immunity; (3) the South Dakota Department of Labor and Management (DOL) decision precludes relitigation of the issue of

whether Schlimgen mitigated his damages; and (4) Schlimgen is not entitled to attorney's fees for work done before the DOL.

[¶ 2] Schlimgen moves for partial summary judgment on the issue of liability against all defendants on the § 1983 cause of action based on the preclusive effect of the administrative agency findings. All parties have responded to the respective motions.

## FACTS

[¶ 3] In 1991, Schlimgen was promoted to the position of building official in the Rapid City Public Works Department. In early 1995, Schlimgen became a vocal participant in a movement challenging the residential development of land near his home on Skyline Drive. Rapid City Mayor McLaughlin was a strong proponent of the Skyline Drive development. Schlimgen attended a Public Works Committee meeting in May of 1995, which McLaughlin also attended. During the meeting, Schlimgen testified against the proposed project after prefacing his remarks with a statement explaining that his opposition to the project was in his role as a citizen and not as a city employee. McLaughlin became very angry with Schlimgen as a result of his comments.

[¶ 4] Shortly after the public meeting, Schlimgen's immediate supervisor (Bjerke) advised Schlimgen that he should keep quiet regarding the Skyline Drive development project if he valued his job. Schlimgen limited his involvement in opposing the Skyline Drive development after this meeting. In October of 1995, Schlimgen's wife spoke at a joint Common Council and Rapid City Planning Committee meeting in opposition to the Skyline Drive Development project. McLaughlin heard her testimony. Two weeks later, Schlimgen was notified of his termination without notice or warning.

[¶ 5] Schlimgen appealed his termination to the DOL alleging that his termination was a violation of his civil and constitutional rights and a wrongful termination under South Dakota law. Following a hearing, the DOL found that Schlimgen's vocal opposition to the Skyline Drive development was a substantial motivating factor causing his termination, and as such, the termination was unconstitutional. Schlimgen was awarded back pay, front pay, prejudgment interest, and damages for a loss of fringe benefits. In this action, Schlimgen is seeking damages pursuant to 42 U.S.C. § 1983 for attorney's fees, emotional distress, and harm to his reputation.

## SUMMARY JUDGMENT STANDARD

[¶ 6] Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

[¶ 7] In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The Supreme Court has instructed that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of

the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S.Ct. at 1356.

[¶ 8] The trilogy of *Celotex, Anderson,* and *Matsushita* provides the Court with a methodology in analyzing motions for summary judgment. *See generally* 1 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 5.04 (2d ed.1991) (discussing the standards for granting summary judgment that have emerged from *Celotex, Anderson,* and *Matsushita*).

### DISCUSSION

[¶ 9] **I. 42 U.S.C. § 1983 Liability of the City of Rapid City**

[¶ 10] **A. Pleading Requirement**

[¶ 11] Rapid City argues that the complaint does not allege that Schlimgen's dismissal was caused by an unconstitutional city custom or policy and therefore, summary judgment should be granted to Rapid City. In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that a heightened pleading standard was not required for claims alleging a violation of 42 U.S.C. § 1983. Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing the pleader is entitled to relief. *Id.* at 168, 113 S.Ct. 1160. A particularity requirement is necessary only in cases involving fraud or mistake. *Id.;* Fed.R.Civ.P. 9(b). *See also Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995); *Kohl v. Casson,* 5 F.3d 1141, 1148 (8th Cir.1993). The allegations in Schlimgen's complaint are sufficient to meet the pleading requirements of Rule 8(a)(2).

[¶ 12] **B. Custom or Policy Requirement**

[¶ 13] Rapid City claims that Schlimgen has no evidence to demonstrate the existence of a custom or policy to deprive Schlimgen of his constitutional right to free speech. A municipality may be held liable under § 1983 only if a municipal custom or policy caused the deprivation of a right protected by the constitution or federal laws. *Monell v. Department of Social Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis County,* 981 F.2d 1537 (8th Cir.1992) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Municipalities may be subjected to § 1983 liability by actions of municipal officials who have final policy-making authority. *City of St. Louis v. Praprotnik,* 108 S.Ct. at 924.

[¶ 14] Although a municipality cannot be held vicariously liable for the acts of its employees under § 1983, it may be sued when edicts or acts of the municipality represent official policy. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Such liability may be imposed against the municipality for a single decision by a municipal policymaker who has final decision making authority in that area of the government's business. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Angarita v. St. Louis County.,* 981 F.2d 1537, 1546 (8th Cir. 1992); *Ware v. Jackson County, Mo.,* 150 F.3d 873, 886–87 (8th Cir.1998). Municipal liability under § 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur,* 106 S.Ct. at 1300. Final policy-making authority is determined by wheth-

er an official has the authority to make official policy or custom regarding the action alleged to have caused the particular constitutional violation at issue. *Angarita,* 981 F.2d at 1547. *See also Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (authority to make municipal policy is authority to determine final policy); *Buzek v. County of Saunders,* 972 F.2d 992 (8th Cir.1992).

[¶ 15] Whether an individual is a final policymaker is a question of law to be resolved by the trial judge before the case is submitted to the jury. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989); *Ware,* 150 F.3d at 885. Relevant legal materials, including state and local law, as well as "custom or usage" having the force of law, must be considered by the trial judge while identifying "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett,* 109 S.Ct. at 2724.

[¶ 16] The undisputed evidence indicates that Mayor McLaughlin, the city attorney, the city personnel director, and Bjerke met to discuss Schlimgen's future employment with Rapid City. After several meetings, they decided that dismissal of Schlimgen was the only viable option. Bjerke notified Schlimgen of his termination.

[¶ 17] Under South Dakota law, the mayor is the chief executive officer of the municipality. SDCL 9–8–1. As the chief executive, he is responsible for administering the executive branch of city government. Schlimgen was an employee of the executive branch. The employee handbook which was adopted by the city council and which applied to Schlimgen provided that "[a]uthority to appoint, promote, transfer, demote, suspend, and separate personnel shall be vested *with the department head with the consent of the Mayor.*" (Emphasis added). The handbook further provided that an employee who is dismissed is entitled to a hearing before the mayor within ten days after submission of a written request.

[¶ 18] In determining whether the mayor is a final policymaker for § 1983 liability, the key question is whether Rapid City delegated to the mayor its power to establish final employment policy with respect to the discharge of executive branch employees. If so, then the mayor's decisions would represent city policy and could give rise to municipal liability. *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. at 1300. *See also Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915, 99 L.Ed.2d 107; *Ware v. Jackson County, Mo.,* 150 F.3d 873 (8th Cir.1998); *Williams v. Butler,* 863 F.2d 1398 (8th Cir.1988).

[¶ 19] According to the employee handbook, employees could only be separated from service with the consent of the mayor. This represents a clear delegation to the mayor of the final decision making authority regarding employee terminations. In addition, pursuant to the handbook, the mayor is the individual responsible for reviewing an employee's termination and deciding whether to reinstate him. McLaughlin admits he was involved with the initial decision to terminate Schlimgen. He authorized the firing and upon review refused to reinstate Schlimgen. Thus, as a matter of law, McLaughlin is an official policymaker with regard to the termination of Schlimgen.

[¶ 20] After the official policymaker on a particular issue has been identified, then it is for the factfinder to determine whether the policymaker's decision caused the deprivation of rights at issue by policies which affirmatively commanded that the deprivation of rights occur or by acquiescence in a longstanding practice or custom of the local governmental entity. *Jett,* 109 S.Ct. at 2724. In this case, the ALJ acted as the factfinder as is discussed below. In determining whether the mayor's acts were the "official policy" of the city, the factfinder would be instructed that a single decision can reflect official city policy provided that a deliberate choice to follow a

course of action was made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*, 475 U.S. at 483–84, 106 S.Ct. at 1300.

[¶ 21] As a matter of law, the court finds McLaughlin is an official policymaker. The findings of the ALJ in the DOL case established the nexus between the official city policy and the deprivation of rights. *See* discussion *infra*. Rapid City's motion for summary judgment is denied as a matter of law.

**[¶ 22] C. Preclusive Effect of DOL Ruling on Liability Against Rapid City**

■ [¶ 23] Schlimgen contends that he is entitled to summary judgment on the issue of Rapid City's liability on the § 1983 cause of action based on the preclusive effect of the DOL ruling. Federal courts must give the findings of a state agency the same preclusive effect that those findings would be entitled to in that state's court, provided that the agency was acting in a judicial capacity, the questions litigated were properly before the agency judge, and the parties had an adequate opportunity to litigate the issues. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Alexander v. Pathfinder, Inc.*, 91 F.3d 59 (8th Cir.1996); *Plough v. West Des Moines Comm. Sch. Dist.*, 70 F.3d 512, 515–16 (8th Cir.1995). All three of these requirements are present here. On March 3, 1999, the DOL issued extensive findings of fact and conclusions of law in a hearing subsequent to the firing of Schlimgen. Rapid City was the named defendant in that matter. An administrative law judge (ALJ) presided over the proceedings. Both parties were represented by their respective counsel. Written discovery as well as depositions were utilized in support of the hearing. During the four-day hearing, both parties presented several witnesses who testified under oath. Counsel had the opportunity to cross examine each witness. A total of 33 exhibits and a transcript totaling 1,247 pages resulted from the hearing.

[¶ 24] The ALJ was acting in a judicial capacity. The parties were afforded an adequate opportunity to litigate the issue before the ALJ. The issue of whether Schlimgen was fired from his job with Rapid City in retaliation for the exercise of his First Amendment right of free speech is grievable and was properly before the ALJ. SDCL Ch. 3–18.

■ [¶ 25] Preclusive effect cannot be given to an administrative finding of fact when those facts have been analyzed under significantly different criteria than would be used in federal or state court. *Fife v. Bosley*, 100 F.3d 87, 89–90 (8th Cir.1996). But when both federal or state law find the same conduct prohibited, then preclusive effect can be given to that determination. *Id.* at 88.

■ [¶ 26] In South Dakota, courts give an agency determination issue preclusive effect based on collateral estoppel if four criteria are met. *Grand State Property v. Woods, Fuller, Shultz & Smith*, 556 N.W.2d 84 (S.D.1996); *Black Hills Novelty Co. v. S.D. Comm'n on Gaming*, 520 N.W.2d 70, 73 (S.D.1994). The four criteria are: (1) the issue decided in the former adjudication must be identical to the present issue; (2) the judgment must be final and on the merits; (3) the parties in the two actions must be the same or in privity; and (4) the parties must have had a full and fair opportunity to litigate the issue in the prior adjudication. *Grand State*, 556 N.W.2d at 87. Under South Dakota law, an unappealed administrative decision is a final judgment. *Sudbeck v. Dale Elec., Inc.*, 519 N.W.2d 63, 67 (S.D.1994).

[¶ 27] After the DOL hearing, the ALJ determined that Schlimgen was terminated for exercising his right to free speech. In reaching this conclusion, the ALJ found that Schlimgen's comments and his wife's comments at public meetings about Skyline Drive development were a matter of public concern, that Rapid City's ability to

promote the efficiency of the Building Inspection Division of the Public Works Department was not affected by either Schlimgen's or his wife's comments about the development, and that the comments of Schlimgen and his wife were a substantial motivating factor in McLaughlin's decision to terminate Schlimgen. The ALJ also found that the decision to terminate Schlimgen was made in a meeting that was held between Bjerke, McLaughlin, the city attorney, and the city personnel director, during which they concluded that dismissal was the only viable option. These issues were all squarely before the ALJ in his determination of whether Schlimgen was discharged in violation of his freedom of speech as guaranteed by the laws of the state of South Dakota. *See* SDCL 3–18–1. The ALJ further found that the only remedies available to the DOL under SDCL Ch. 3–18 include back pay, front pay (when reinstatement is not appropriate), prejudgment interest, and loss of fringe benefits. Those damages were awarded by the ALJ. The ALJ found that he did not have authority under South Dakota state law to award attorney's fees to the prevailing party. Neither party appealed this decision.

[¶ 28] Generally, there are three primary issues in First Amendment retaliation cases under § 1983:(1) whether the plaintiff's speech was "protected activity" under the First Amendment; (2) whether the plaintiff's protected activity was a substantial or motivating factor in defendant's decision to terminate; and (3) whether the defendant would have taken the same action irrespective of plaintiff's protected activity. *Hamer v. Brown,* 831 F.2d 1398 (8th Cir.1987). In determining whether plaintiff's speech was protected, the court must first consider whether the speech involves a matter of public concern and whether, in balancing the competing interests, plaintiff's interest in commenting on matters of public concern outweighs the government's interest in rendering efficient services to its constituents. *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). In addition, to hold a municipality liable under § 1983, the factfinder must determine that the decision to terminate was an official city policy which was made as a deliberate choice to follow a course of action after the policymaker considered various alternatives. *Pembaur,* 106 S.Ct. at 1292. Schlimgen seeks back pay, front pay, prejudgment interest, loss of fringe benefits, compensatory damages for emotional distress and damage to his reputation, and attorney's fees.

[¶ 29] The issue before this court, whether Schlimgen was terminated for exercising his First Amendment rights in violation of 42 U.S.C. § 1983, is identical to the issue formerly adjudicated by the ALJ. The ALJ's decision was final, it was based upon the merits of the case, and it was made only after both parties were given a full and fair opportunity to litigate the issue. Therefore, the preclusive effect of offensive collateral estoppel bars Rapid City's relitigation of whether Schlimgen's and his wife's exercise of their First Amendment rights was a substantial motivating factor in his termination.

[¶ 30] When the agency decision is given preclusive effect, no genuine issues of material fact remain regarding Rapid City's liability under the § 1983 cause of action. Schlimgen's speech was found to be a protected activity under the First Amendment; the speech was found to be a substantial motivating factor in Rapid City's decision to terminate him; and Rapid City would not have taken the same action irrespective of the speech. In addition, McLaughlin met with other city officials and after considering their options, McLaughlin and the other city officials made a deliberate choice to terminate Schlimgen. Thus, summary judgment is granted to Schlimgen against Rapid City on the issue of liability.

[¶ 31] **D. Preclusive Effect of DOL Ruling on McLaughlin**

[¶ 32] Schlimgen also contends that McLaughlin is in privity with Rapid

City and therefore, Schlimgen is entitled to summary judgment against McLaughlin on the § 1983 cause of action. "Privity is essentially the concept of legal similarity— who are the parties and whether they are legally identical." *United States ex rel. Yankton Sioux Tribe v. Gambler's Supply, Inc.*, 925 F.Supp. 658, 664 (D.S.D.1996). There are generally three categories of non-parties who will be considered in privity with a party to the prior action and who will be bound by a prior adjudication: (1) where the non-party is the successor in interest to the prior party; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit. *Tyus v. Schoemehl*, 93 F.3d 449 (8th Cir.1996).

[¶ 33] When determining identity of interests between the two parties, factors to be considered include whether a close relationship exists between the prior and present parties, whether the non-party participated in the prior litigation, whether there is apparent acquiescence, and whether the non-party deliberately maneuvered to avoid the effects of the first action. *Tyus*, 93 F.3d at 455. Other factors to be considered included adequacy of representation and whether the issue raised is a public law issue or private law issue. *Id.* at 455–56.

[¶ 34] In the present case, McLaughlin was not Mayor of Rapid City in 1999 when the hearing was held before the Department of Labor. Therefore, he was not in a position to control the prior litigation and was not the successor in interest to Rapid City. He did not participate in the prior litigation and did not avoid participation as a party in the grievance hearing. Schlimgen is not entitled to recover punitive damages against Rapid City, but punitive damages are available as a remedy against McLaughlin. Thus, Rapid City had no interest in defending McLaughlin with regard to the punitive damages issue during the DOL hearing. The court finds that the evidence is not sufficient to establish privity and there-fore, Schlimgen's motion seeking summary judgment against McLaughlin is denied.

### [¶ 35] II. Wrongful Termination

[¶ 36] Rapid City alleges that Schlimgen is barred from retrying his wrongful termination cause of action under the principle of res judicata. Any claim properly brought before an administrative agency may be barred from being retried on the merits due to res judicata. *McElhaney v. Anderson*, 598 N.W.2d 203, 206 (S.D.1999). Res judicata is applicable if four requirements are met: (1) the issue decided in the former adjudication is identical to the present issue; (2) there was a final judgment on the merits; (3) the parties to the two actions are the same or in privity; and (4) there was a full and fair opportunity to litigate the issues in the prior adjudication. *Springer v. Black*, 520 N.W.2d 77 (S.D.1994). Res judicata may also be applied in a civil action when a new defendant affirmatively raises this defense to bar a plaintiff from reasserting issues the plaintiff had actually previously litigated and lost on the merits against another defendant. *Id.* at 79. All four of these factors have been met. The DOL ruled in favor of Rapid City on the claim of wrongful termination. Thus, res judicata prohibits Schlimgen from relitigating the wrongful termination cause of action against Rapid City. Plaintiff admits in his brief that he is precluded from relitigating the wrongful termination cause of action.

### [¶ 37] III. Mitigation of Damages

[¶ 38] Rapid City moves for summary judgment on the issue of whether Schlimgen is precluded from relitigating the mitigation of damages issue. The DOL found that Schlimgen did not make reasonable efforts to obtain other employment. The agency decision also held that Schlimgen could not recover damages which resulted from consequences he reasonably could have avoided.

[¶ 39] Schlimgen did not appeal this or any other portion of the agency ruling.

Therefore, the judgment was both valid and final on its merits. *Sudbeck,* 519 N.W.2d at 67. Applying the res judicata factors identified previously, Schlimgen is precluded from relitigating the mitigation of damages issue before this court with regard to the § 1983 cause of action against Rapid City. Schlimgen will be limited to recovery of damages for emotional distress, damage to reputation, and attorney's fees in his § 1983 action against Rapid City.[1]

### [¶ 40] IV. Attorney's Fees Issue

[¶ 41] Rapid City contends that as a matter of law Schlimgen is not entitled to attorney's fees related to the earlier DOL hearing. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), states that a court may, in its discretion, allow the prevailing party a reasonable attorney's fee as part of the party's costs. The fees must have been earned during an action or proceeding to enforce a provision of specific enumerated statutes, including 42 U.S.C. §§ 1981, 1981(a), 1982, 1983, 1985, and 1986, title IX of Pub.L. No. 92–318, the Religious Freedom Restoration Act of 1993, title VI of the Civil Rights Act of 1964, or 42 U.S.C. § 13981. 42 U.S.C. § 1988(b).

[¶ 42] Although the earlier proceeding was not to enforce one of the aforementioned § 1988 civil rights laws, an attorney's fee award may be granted after certain determinations are made by the court. *See North Carolina Dep't of Transp. v. Crest Street Community Council,* 479 U.S. 6, 15, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986). The claim must be for specific portions of work product from an earlier administrative proceeding. *Id.* The work done must be useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it has reached. *Id.* Another consideration is whether the ALJ was authorized to award attorney's fees. *Id.* at 16, 107 S.Ct. 336.

[¶ 43] Attorney's fees may be granted for investigative work that was used for and, in fact, gave rise to the pending 42 U.S.C. § 1983 action. *McDonald v. Armontrout,* 860 F.2d 1456, 1461–62 (8th Cir.1988). 42 U.S.C. § 1988 awards are not limited to work performed after the complaint is filed. *McDonald,* 860 F.2d at 1462. This includes a recovery for fees for time spent investigating facts and researching potential legal claims. *McDonald,* 860 F.2d at 1462 (citing *Webb v. Board of Educ. of Dyer County,* 471 U.S. 234, 250, 105 S.Ct. 1923, 1932, 85 L.Ed.2d 233 (1985)). More specifically, fees may be awarded for "research or investigation done in connection with" a related proceeding, to the extent it "proved directly relevant to the successful prosecution of the later civil rights" action. *McDonald,* 860 F.2d at 1462 (quoting *Perkins v. Cross,* 728 F.2d 1099, 1100 (8th Cir. 1984)).

[¶ 44] Evaluating the facts in favor of the nonmovant Schlimgen, summary judgment in favor of Rapid City is not appropriate on the issue of attorney's fees. Although the earlier administrative proceeding was not held to enforce one of the § 1988 civil rights laws, Schlimgen has submitted evidence demonstrating that an award of reasonable attorney's fees may be appropriate. Schlimgen claims that little new discovery or preparation for the § 1983 action has been necessary due to the earlier proceeding, fulfilling the requirement of creating useful and necessary

---

1. United States District Judge Richard H. Battey previously determined by order dated May 4, 1999, that the doctrines of issue and claim preclusion do not preclude Schlimgen from recovering damages for emotional distress, harm to reputation, attorney's fees and punitive damages, because the parties did not have an adequate opportunity to litigate these issues in the DOL hearing. *See Frazier v.*

*King,* 873 F.2d 820 (5th Cir.1989) and *Healy v. Town of Pembroke Park,* 831 F.2d 989 (11th Cir.1987). The South Dakota Supreme Court in *Montgomery v. Big Thunder Gold Mine, Inc.,* 531 N.W.2d 577 (S.D.1995) similarly recognized that a plaintiff can recover damages which the agency did not have the statutory authority to award in a separate action.

information to advance the § 1983 action, that specific portions of the work from the earlier administrative proceeding are applicable to the § 1983 action, and that the investigation done by his attorneys in the administrative matter specifically gave rise to the § 1983 action.

[¶ 45] Accordingly, it is hereby

[¶ 46] ORDERED that defendant City of Rapid City's motion for summary judgment (Docket 72) regarding the issue of 42 U.S.C. § 1983 liability is denied.

[¶ 47] IT IS FURTHER ORDERED that plaintiff Schlimgen's motion for partial summary judgment (Docket 80) related to the preclusive effect of the earlier DOL decision regarding fact upon defendant City of Rapid City is granted.

[¶ 48] IT IS FURTHER ORDERED that defendant City of Rapid City's motion for summary judgment (Docket 72) dismissing the wrongful termination cause of action and precluding relitigation of the mitigation of damages issue is granted.

[¶ 49] IT IS FURTHER ORDERED that Rapid City's motion for summary judgment (Docket 72) denying attorney's fees related to the earlier administrative hearing is denied.