Paul DORR and Alexander Dorr, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiffs,

v.

Douglas L. WEBER, Individually and in His Capacity as Sheriff and Osceola County, Iowa, Defendants.

No. C 08–4093–MBW.

United States District Court, N.D. Iowa, Western Division.

Sept. 30, 2010.

Erick G. Kaardal, Vincent J. Fahnlander, Mohrman & Kaardal, PA, Minneapolis, MN, William F. Mohrman, Saint Paul, MN, for Plaintiffs.

Douglas L. Phillips, Klass Law Firm, L.L.P., Sioux City, IA, for Defendants.

## ORDER REGARDING PLAINTIFF PAUL DORR'S MOTION FOR ATTORNEYS' FEES AND COSTS

MARK W. BENNETT, District Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION AND PROCEDURAL HISTORY* ............................ 1025

II. LEGAL ANALYSIS ............................................................1027
 A. Authority For And Purpose Of Fee Awards ...........................1027
 B. Paul Dorr's Fee Claim ............................................1028
 1. "Prevailing party" ............................................1028
 2. Calculation ...................................................1029
 a. Partial success .............................................1031
 b. Excessive hourly rate .......................................1032
 c. Reductions for hours not reasonably expended, overreaching,
 and "block billing". ........................................1034
 3. Costs and expenses ............................................1037
 C. Summary .........................................................1037

III. CONCLUSION ....................................................1038

"Avarice, the spur of industry."—
David Hume

"The tighter you squeeze, the less
you have."—Thomas Merton

## I. INTRODUCTION AND PROCEDURAL HISTORY

As this case demonstrates, avarice may be the spur of industry, but it also has the potential to be the bane of the plaintiff's civil rights attorneys' fee request. Plaintiffs Paul Dorr (Paul), and his son, Alexander Dorr (Alexander) (collectively, "the Dorrs"), filed a "Class Action Second Amended Complaint" on February 9, 2010, naming defendants Sheriff Douglas L. Weber (Weber) and Osceola County, and asserting claims under the First Amendment of the United States Constitution, as well as asserting claims under 42 U.S.C. §§ 1983 and 1988 (civil rights statutes), 28 U.S.C. § 2201 (declaratory judgment statute), and the Second and Fourteenth Amendments to the United States Constitution.[1]

The Dorrs alleged that, in 2007 and 2008, they sought nonprofessional permits to carry weapons, pursuant to IOWA CODE § 724.7, but, even though they met all of the statutory criteria necessary for issuance of such permits, pursuant to IOWA CODE § 724.8, Weber refused to issue the permits without justification. Therefore, they alleged generally that all defendants acted illegally in denying their applications for nonprofessional permits to carry a weapon, meaning that the decisions were unreasonable, not authorized, and contrary to the terms, spirit, and purpose of the statute creating and defining nonprofessional permits for citizens to carry a weapon under Iowa law, and, thus, the defendants violated their constitutional rights under the Second and Fourteenth Amendments of the United States Constitution, including their rights to due process, equal protection, and to keep and bear arms.

On February 18, 2010, both sides filed Motions for Summary Judgment. The Dorrs argued that Weber wrongfully denied Paul a nonprofessional permit to carry a concealed weapon based on Paul's political activities and writings. The Dorrs also argued that Weber wrongfully denied

---

1. The putative class is defined in the Second Amended Complaint, ¶ 14, as "all individuals who have or will apply for a nonprofessional permit to carry a weapon under Iowa Code § 724.8, specifically those who have been denied a permit under Iowa Code § 724.8(5)."

I observe that this class, as presently defined, is not restricted to persons who applied for nonprofessional permits to carry a weapon in Osceola County and who were purportedly denied such permits by the named defendants.

Alexander a nonprofessional permit to carry a concealed weapon until Alexander turned the age of twenty-one, even though IOWA CODE § 724.8 allows an applicant to obtain a nonprofessional permit at age eighteen. The Dorrs alleged that these actions constituted a clear denial of their Second Amendment right to bear arms, and violations of their right to equal protection and due process under the Fourteenth Amendment, therefore, the Dorrs were entitled to summary judgment as a matter of law. In the defendants' Motion for Partial Summary Judgment, they asserted that Weber was entitled to qualified immunity, that summary judgment should be granted on the Dorrs' due process claim because the Dorrs have no federally protected right to carry concealed weapons, and that the defendants were entitled to summary judgment on the Dorrs' equal protection claims because the Dorrs cannot establish that they were treated differently than other similarly situated persons. In response to Dorrs' Motion for Summary Judgment, the defendants filed a timely joint resistance, where they asserted material questions of fact existed concerning Weber's motivation for denying the Dorrs' permit applications, and the defendants generally denied the alleged Second Amendment, due process, and equal protection violations. The Dorrs filed a timely response to defendants' Motion For Partial Summary Judgment in which they argued that Weber was not immune from suit because Weber had no legitimate reason to deny the Dorrs' nonprofessional permit applications and, as a result, his arbitrary and capricious denial of their nonprofessional permit applications infringed upon their Second Amendment right to keep and bear arms.

On May 18, 2010, I denied plaintiff's Motion for Summary Judgment, and granted in part and denied in part defendants' Motion for Partial Summary Judgment. *Dorr v. Weber*, 741 F.Supp.2d 993,

2010 WL 1976743 (N.D.Iowa, 2010). Specifically, I denied the motion as to Paul's equal protection claim, but granted it as to Weber's claim for qualified immunity on plaintiffs' Second Amendment claims, plaintiffs' Second Amendment claims against Osceola County, Alexander's equal protection claim, and plaintiffs' due process claims. *Id.* at 1010, at *12.

On June 16, 2010, I held a one-day bench trial on Paul's First and Fourteenth Amendment claims, and Alexander's remaining First Amendment claim. On July 8, 2010, I issued a Judgment in favor of Paul against Weber. *Dorr v. Weber*, 741 F.Supp.2d 1010, 1021, 2010 WL 2710468 at *9 (N.D.Iowa, 2010) (holding that Weber's denial of Paul's application for a concealed nonprofessional permit was "unconstitutional retaliation for exercising [Paul's] First Amendment rights of freedom of speech and freedom of association."). I also found that Weber did not retaliate against Alexander for exercising his rights under the First Amendment. *Id.* at 1022, at *10. Consequently, I ordered Weber to immediately issue Paul a nonprofessional permit to carry a weapon, and ordered Weber to enroll in, and successfully complete, a court approved college level course concerning the United States Constitution. *Id.*

On July 22, 2010, plaintiff Paul Dorr filed a Motion for Attorneys' Fees and Costs, seeking an award of $115,985.15 for attorneys' fees and $2,430.60 for expenses. Weber resists the fee application on the ground that it is excessive in terms of hours spent, hourly rates claimed, and Paul's limited success against only one of several defendants on only one of several claims.

Ultimately, I find Paul is a prevailing party within the meaning of 42 U.S.C. § 1988 and, therefore, entitled to an award of some reasonable amount of attorneys'

fees. However, upon a line by line review of the fee application, plaintiff's counsel breathes new life into Merton's observation that the tighter you squeeze, the less you have. I have concluded that the fees claimed should be reduced for time not reasonably expended, further reduced by ten percent for "block billing," and reduced still further by an additional ten percent "penalty" for submitting a wildly over-inflated fee request.

## II. LEGAL ANALYSIS

### A. Authority For And Purpose Of Fee Awards

▆▆▆ The Civil Rights Attorney's Fees Awards Act of 1976 provides for the payment of attorneys' fees to prevailing parties in § 1983 cases. 42 U.S.C. § 1988. That statute provides, in pertinent part, as follows:

> In any action or proceeding to enforce a provision of section [ ] ... 1983, ∴... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. Thus, a fee award pursuant to § 1988, as the statute says, is made at the discretion of the court. *Jensen v. Clarke,* 94 F.3d 1191, 1203 (8th Cir.1996); *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 804 (8th Cir.1993). In *Casey,* the Eighth Circuit Court of Appeals found that a fair evaluation of a fee claim required review of the purpose of § 1988:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry

to monitor rights violations at their source, while imposing the costs of rights violations on the violators. See *Id.* A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

> In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913.

*Casey,* 12 F.3d at 805. The Supreme Court has also said that "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting H.R. Rep. No. 94–1558, p. 1 (1976)). Attorneys' fee awards in civil rights cases are designed "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (referencing fee awards under 42 U.S.C. § 1988 and quoting *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982)). With this purpose, and this general standard, for an award of fees in civil rights

cases in mind, I now turn to evaluating the fee claim in this case.[2]

## B. Paul Dorr's Fee Claim

### 1. "Prevailing party"

■ Section 1988 authorizes awards of reasonable attorneys' fees to a "prevailing party." 42 U.S.C. § 1988. Thus, the initial question regarding the propriety of awarding attorneys' fees in a case such as this is whether the plaintiff can be characterized as a "prevailing party." *Casey,* 12 F.3d at 804. In *Hensley,* the Supreme Court stated that a party is a "prevailing party" when he or she " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.' " *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (a prevailing party is one who obtains "at least some relief on the merits of his claim"); *Casey,* 12 F.3d at 804 (quoting *Farrar* ). Thus, the prevailing party inquiry "does not turn on the magnitude of the relief obtained." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566; *Casey,* 12 F.3d at 804.

In *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers,* 26 F.3d 842 (8th Cir.1994), the Eighth Circuit Court of Appeals found that the Supreme Court had "delineated the extreme contours of what constitutes a prevailing civil rights plaintiff for purposes of fee-shifting" in *Farrar:*

> In *Farrar,* the Court re-examined three recent civil rights attorneys' fee decisions to refine the definition of a prevailing civil rights plaintiff under 42 U.S.C.

§ 1988. *Farrar,* 506 U.S. at 109–112, 113 S.Ct. at 572–73 (discussing *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). In *Farrar,* the Court was confronted with the case of a plaintiff who won nominal damages under section 1988; a plaintiff whom Justice O'Connor characterized with, "[i]f ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar," *Farrar,* 506 U.S. at 116, 113 S.Ct. at 575 (O'Connor, J., concurring). Give this factual scenario, the Court rejected in part the Garland conception of prevailing party as underinclusive: "[A] technical victory may be so insignificant ... as to be insufficient to support prevailing party status." *Garland,* 489 U.S. at 792 [109 S.Ct. at 1493]. According to the Court, even a technically victorious plaintiff would be a prevailing party for purposes of section 1988. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under *Hensley v. Eckerhart,* 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40] (1983)." *Farrar,* 506 U.S. at 114, 113 S.Ct. at 574. Thus, the Court held

---

**2.** Weber notes that the Oregon Firearms Education Foundation paid between $15,000.00 and $20,000.00 of Paul Dorr's legal fees. Weber contends that this sum should be subtracted from any sum the court awards plaintiff for fees and costs. However, as Weber's counsel admitted at the hearing on Motion for Attorneys' Fees and Costs on August 27, 2010, there is no authority for this proposition. I believe that it would be an abuse of discretion to reduce the fee award based on contributions that a third party made, and moreover, significantly undermine the purpose of the fee shifting statute.

that a plaintiff who received nominal civil rights damages is a prevailing party under section 1988, but is not necessarily entitled to attorneys' fees because, under section 1988, prevailing parties are entitled only to reasonable attorneys' fees. The nominal damage award is a factor to consider in determining the reasonableness of such fee awards, but not a factor in determining the prevailing status of the plaintiff. As Justice O'Connor explains in her concurrence, "when a plaintiff's victory is purely technical or de minimis, a district court need not go through the usual complexities involved in calculating attorney's fees....As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the de minimis nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is de minimis and announce a sensible decision to 'award low fees or no fees' at all." *Farrar,* 506 U.S. at 118, 113 S.Ct. at 576 (O'Connor, J., concurring).

*Marquart,* 26 F.3d at 850.

■ It is readily apparent that Paul constitutes a "prevailing party" in this § 1983 case, even though he obtained relief on only one of his many claims against only one of the many defendants. Paul obtained very significant relief on his civil rights claim in the form of injunctive relief and issuance of a nonprofessional permit to carry a weapon, relief that "materially alter[ed] the legal relationship of the parties." *Marquart,* 26 F.3d at 850 (citing *Farrar,* 506 U.S. at 113, 113 S.Ct. 566). As a result, I conclude that Paul not only is a "prevailing party," but one entitled to an award of some reasonable attorneys' fees. Therefore, I turn to the next question, which is the method for calculating what fee award is "reasonable" in this case.

### 2. Calculation

■ The method employed by the Supreme Court for calculating attorneys' fees is known as the "lodestar" method. *Hensley,* 461 at 433, 103 S.Ct. 1933; *Jensen,* 94 F.3d at 1203; *Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir.2005); *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir.2002). Under the lodestar method, the district court multiplies the number of hours reasonably expended by the relevant market rate for legal services, then reduces the amount for partial success, if necessary. *Jensen,* 94 F.3d at 1203; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (the lodestar is "the product of reasonable hours times a reasonable rate"). The Supreme Court has stated that in construing § 1988 attorneys' fees, "we have generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates." *Venegas v. Mitchell,* 495 U.S. 82, 86, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *City of Burlington v. Dague,* 505 U.S. 557, 561, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Delaware Valley,* 478 U.S. at 564, 106 S.Ct. 3088; *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The Supreme Court in *Hensley* and *Delaware Valley* considered a number of factors, identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and hence called the "Johnson factors," as relevant to determination of an appropriate fee under the lodestar method. *See Hensley,* 461 U.S. at

430, 103 S.Ct. 1933; *accord Delaware Valley,* 478 U.S. at 565–66, 106 S.Ct. 3088.[3] The Eighth Circuit Court of Appeals agrees that these factors "should be used to set the reasonable number of hours and reasonable hourly rate components of the fee award formula." *McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.1988). The trial court may undertake various reductions of the claimed fees, based, for example, on limited success, an unreasonable hourly rate, excessive hours expended, or poor record keeping. *See Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566.[4] However, " '[t]he lodestar award ... is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed in the lodestar.' " *Casey,* 12 F.3d at 805 (quoting *Hendrickson v. Branstad,* 934 F.2d 158, 162 (8th Cir. 1991)).

In discussing the usefulness and the role of the lodestar methodology in more detail, the Supreme Court has stated the following:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of

hours is inadequate, the district court may reduce the award accordingly.

> The district court should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976) [1976 U.S.C.C.A.N. 5908, p. 5913]. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933; *Jensen,* 94 F.3d at 1203 (the lodestar method "focuses on 'the significance of the overall relief obtained by the plaintiff in relation to the hours actually expended on the litigation,' " quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933); *United HealthCare Corp. v. American Trade Ins. Co., Ltd.,* 88 F.3d 563, 574 (8th Cir.1996) ("It remains the applicant's burden to es-

---

**3.** The twelve Johnson factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the profes-

sional relationship with the client; and (12) awards in similar cases." *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933 (citing *Johnson,* 488 F.2d at 717–19).

**4.** The extent to which the lodestar figure may be enhanced has been called into serious question. *See Dague,* 505 U.S. at 557, 112 S.Ct. 2638. However, because no enhancement has been sought, whether such an enhancement is still possible is not an issue in this case.

tablish entitlement to a particular award by presenting adequate documentation of its efforts in the litigation," citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933).

### a. Partial success

Weber contends that Paul's fee claim should be reduced, because Paul prevailed on only one of his many claims against only one of several defendants. Moreover, Weber points out that there were two plaintiffs in this case, and one of them, Alexander, did not prevail. Therefore, Weber believes it is reasonable to allocate half of the compensable hours to each plaintiff, and compensate Paul for no more than half of what he seeks.

■ The United States Supreme Court has noted that the extent of the success of the litigant determines not only whether he or she is a "prevailing party" entitled to any fee award at all, but also is "crucial" to determining the amount of any fee award. *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees under 42 U.S.C. § 1988."). In a fee-claim action, in deciding the amount of attorneys' fees to which the prevailing party is reasonably entitled, the Supreme Court has said that "the result is what matters." *Id.* at 435, 103 S.Ct. 1933. Thus, the degree of success determines the extent to which the claimant may recover attorneys' fees, such that for "excellent results," a plaintiff should recover for his or her counsel "a fully compensatory fee," but for partial or limited success, fees based on the product of the hours reason-

ably expended on the litigation as a whole and a reasonable hourly rate "may be an excessive amount." *Id.* at 435–36, 103 S.Ct. 1933.

■ On the other hand, the Supreme Court has also cautioned that an action for attorneys' fees "should not result in a second major litigation" revisiting the merits of the underlying action. *Commissioner, Immigration and Naturalization Serv. v. Jean,* 496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933); *Independent Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 766, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) (quoting *Hensley* ); *Pierce v. Underwood,* 487 U.S. 552, 563, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Hensley* ); *Blum,* 465 U.S. at 901, 104 S.Ct. 1541 (quoting *Hensley* ). The Court in *Jean* observed that revisiting the merits of the underlying litigation at each stage attorneys' fees are requested "can spawn a 'Kafkaesque judicial nightmare' of infinite litigation to recover fees for the last round of litigation over fees." *Jean,* 496 U.S. at 163, 110 S.Ct. 2316 (citing *Cinciarelli v. Reagan,* 234 U.S.App.D.C. 315, 324, 729 F.2d 801, 810 (1984)). Furthermore, where the plaintiff's successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories, it is not an abuse of discretion for the court to award the entire fee. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.[5] The Eighth Circuit Court of Appeals has held that "[o]nce a party is found to have prevailed, '[a] fee award should not be reduced merely because a

---

**5.** The Supreme Court elaborated further on this theme in *Hensley:* "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won sub-

stantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933.

party did not prevail on every theory raised in the lawsuit.'" *Casey,* 12 F.3d at 806 (quoting *Hendrickson,* 934 F.2d at 164).

■ In the present case, I find that, although only Paul prevailed against one of several defendants, and upon only one of his claims against that defendant, no reduction in fees is required. Instead, I find that the claims against the defendants were inextricably intertwined and involved a common core of facts as well as related legal theories. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. All of the claims were related because they centered on common facts: that both Dorrs were denied a concealed weapons nonprofessional permit by Weber, which the Dorrs believed was unconstitutional. The fact remains that Paul ultimately prevailed and that he obtained "excellent results." *See Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933. The Supreme Court has maintained that when a plaintiff obtains "excellent results," a plaintiff should recover for his or her counsel "a fully compensatory fee." *Id.* I granted Paul's request for declaratory relief and declared that Weber's denial of Paul's application for a concealed weapons nonprofessional permit was unconstitutional retaliation for Paul's exercising his First Amendment rights of freedom of speech and freedom of expression. I also granted Paul's request for injunctive relief and ordered Weber to immediately issue Paul a nonprofessional permit to carry a weapon under Chapter 724 of the Iowa Code. Further, I ordered Weber to enroll in, and successfully complete, a court approved course concerning the United States Constitution. Indeed, Weber is currently enrolled in just such a class. Because Paul obtained "excellent results," I will not reduce his fee award simply because Alexander did not prevail, or that Paul prevailed against only one of several defendants on only one of several claims. *See Casey,* 12 F.3d at 806.

#### b. *Excessive hourly rate*

■ Weber contends that the hourly rate claimed by Paul's counsel, $375 for Mr. Mohrman, $350 for Mr. Kaardal, $220 for Mr. Fahnlander, $150 for Mr. Magnuson, and $110/hour for the firm's paralegal, is excessive. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet,* 278 F.3d 819, 828–29 (8th Cir.2002) (quoting *Emery v. Hunt,* 272 F.3d 1042, 1047 (8th Cir.2001)). Procedurally, the Supreme Court has explained that,

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 895, 104 S.Ct. 1541. The Eighth Circuit Court of Appeals has noted, however, that the Supreme Court did not define "community" in *Blum. See McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.1988). In *McDonald,* the court suggested that "community" should probably be given an expansive reading, and that the entire state may be the relevant market. *Id.* Even the state itself may not be a boundary to the determination of a reasonable hourly rate. For instance, the Eighth Circuit Court of Appeals also held that the appropriate hourly rate for § 1983 litigation conducted in South Dakota was to be determined by the prevailing rates in the Chicago market for legal services, where the prevailing plaintiff's lawyers were from Chicago, were leaders in

the field of law in question, and routinely did the kind of work in question. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir.1995). This was so, even though the court agreed with the defendant that competent local counsel could have been found to handle the case and do it well. *Id.* The court of appeals upheld use of the Chicago rate, because it found that the out-of-state attorneys were able to handle the case in a shorter length of time than a local lawyer without comparable experience would have needed. *Id.*

■ In specialized areas of law, such as civil rights, the national market may provide a reasonable hourly rate. *See Casey*, 12 F.3d at 805 (" 'A national market or a market for a particular legal specialization may provide the appropriate market.' ") (citation omitted). This is so because,

> Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens. In other words, "the market rate of legal time is the opportunity cost of that time, the income foregone by representing this plaintiff." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir.1993) (quoting *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992)). Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. The rates for these lawyers are usually below market for a reason. A refusal to pay for the experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence.

*Casey*, 12 F.3d at 805.

Weber argues that the hourly rate claimed by Paul's counsel is excessive as compared to his own counsel's rate. Weber also alleges that it is inappropriate to award fees based on an hourly rate that may prevail in Minneapolis, Minnesota, where Paul's counsel practice, when the rate in Sioux City would presumably be lower.

Although there might be some argument for reducing the rate, because Sioux City is not the metropolitan area that Minneapolis is, and hourly rates here are, in general, considerably lower than in Minneapolis, *McDonald*, 860 F.2d at 1460 (recognizing such an argument as between "rural" and "urban" areas, but rejecting it in that case), the hourly rate claimed, in my view, is not excessive for the kind of litigation in question in the midwest market. *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir.) (court may evaluate hours and rate claimed in light of its own knowledge, experience, and expertise); *See Miller*, 70 F.3d at 519. Nor is the hourly rate claimed excessive in light of the *Johnson* factors. *See Hensley*, 461 U.S. at 430, 103 S.Ct. 1933 (citing *Johnson*, 488 F.2d at 717–19). Specifically, the hourly rate claimed is appropriate for the skill required, the customary rate charged by Paul's counsel, the amount involved and the results obtained, the experience, reputation, and ability of these attorneys, the "undesirability" of prosecuting a civil rights action against the county or county officials, the nature and length of service involved, and awards in similar cases I have tried. *Johnson*, 488 F.2d at 717–19.

Moreover, I do not believe Paul's attorneys' rates are unreasonable, specifically in light of decisions where I have held that the relevant market is not confined to Sioux City, Iowa, nor the entire state of Iowa, not least because attorneys from the surrounding metropolitan areas in the midwest regularly appear in Iowa courts in civil rights cases. *Baker v. John Morrell*

*& Co.*, 263 F.Supp.2d 1161, 1191 (N.D.Iowa 2003). I also do not agree with Weber's contention that any rate higher than his attorney's customary billing rate is unreasonable. While Weber's counsel may be offering his clients more bang for their buck, he is an outlier, albeit a very positive one, for providing skilled counsel at very modest rates. However, he is not the standard by which I believe it is fair to measure the rest of the bar.[6] Therefore, I will not reduce the hourly rate claimed in my computation of a reasonable fee.[7]

### c. Reductions for hours not reasonably expended, overreaching, and "block billing"

Weber points out that Paul is seeking to recover fees for more than 500 hours of attorney and paralegal time, and that these numbers are extraordinary in light of the six hour case that was tried. I wholeheartedly agree. Among the various purposes of the Fees Act, surely legalizing fee-shifting extortion by self-promoting,[8] over-reaching plaintiff's lawyers—who can generate press releases faster than legiti-

mate constitutional theories—was not one of them.

 In attorneys' fees matters, trial courts have been instructed to utilize their own knowledge relating to various aspects of the lodestar. "The trial judge should weigh the hours claimed against his [or her] knowledge, experience and expertise of the time required to complete similar activities." *Gilbert*, 867 F.2d at 1066 (citing *Johnson*, 488 F.2d at 717, the same decision relied upon in *Hensley* and *Delaware Valley* as stating appropriate factors for determination of attorneys' fees); *accord Saxton v. Secretary, DHHS*, 3 F.3d 1517, 1521 (Fed.Cir.1993) ("Trial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests," citing cases); *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984) ("The Court ... may bring to bear its knowledge and experience concerning ... the time demands of the particular case."). Therefore, I have used my prior knowledge and experience in litigating many hundreds of § 1983 cases, as

---

6. I also note that Weber's counsel, who frequently appears before this court, has always appeared on behalf of the defense where he is always paid: win, lose, or draw.

7. While I have not reduced the hourly rates claimed by plaintiff's attorneys there were many disturbing actions in this case that caused concern about their experience in civil rights litigation in particular, and experience in federal court, generally. Their experience in civil rights and First Amendment actions and experience in federal court were, after all, the basis proffered to justify their claimed hourly rates. These actions or in some cases inaction include but are not limited to: the need to file several amended complaints; pleading constitutional claims with no basis in fact and law; the failure to EVER move to certify the class that was repeatedly plead; the total failure to comply with FED.R.CIV.P. 5.1 (plaintiff's attorneys did not serve notice on the state attorney general and obtain certification by the court as required by FED.

R.CIV.P. 5.1(a)(2) and (b)); the failure to recognize that the Osceola County Sheriff's Office is neither a "person" under § 1983 nor a legal entity capable of being sued under either state or federal law; submitting proposed jury instructions that were riddled with legal error; the last minute ditching of plaintiff's claims entitling them to a jury trial and their woefully inadequate attempts to abandon these claims requiring several contacts by me to instruct them on the correct procedure and the law as it related to their attempts to jettison plaintiff's Seventh Amendment right to trial by jury literally at the eleventh hour.

8. *See, e.g. http://www.mklaw.com/purpose.asp,* where the plaintiff's lawyers tout their "wealth of experience in trial practice and litigation," "thriving constitutional law practice," and a combination of "big firm training and expertise with the nimble innovation and zeal of a growth-oriented entrepreneurial business in order to deliver the highest quality services."

both a lawyer and a judge, and imposed reductions in the number of hours for Paul's fees request, Appendix 1, "Spreadsheet comparing hours claimed by Mohrman Kaardal, P.A. vs. hours awarded." The Eighth Circuit Court of Appeals has indicated a preference for hour-by-hour reductions. *See H.J., Inc. v. Flygt Corp.,* 925 F.2d 257, 261 (8th Cir.1991). The itemized appendix makes it clear where I believe Paul's attorneys are claiming an excessive amount of hours for the services performed. Paul's attorneys should not claim a high hourly rate based on their alleged expertise, and then turn around and bill an excessive amount of hours in a simple, straight-forward First Amendment case like this one. Therefore, I have cut the total hours claimed by plaintiff's attorneys from 615.9 hours to 323 hours, and reduced their fee award from $115,985.15 to $51,744.26 for excessive and redundant work.[9]

It must be remembered that fee-shifting statutes are designed to "ensure effective access to the judicial process for persons with civil rights grievances, not to serve as a full employment or continuing education programs for lawyers and paralegals." *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992). After a careful review of the time records for Paul's attorneys, I am left with a firm and abiding conviction that there was a great deal of unnecessary duplication of effort between Paul's three attorneys and an excessive amount of hours charged. The Eighth Circuit Court of Appeals has stated,

> [W]here more than one attorney represents the prevailing party, the contribution of all attorneys must be taken into consideration and the fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers.

*Catlett v. Missouri Highway & Transp. Comm'n,* 828 F.2d 1260, 1271 (8th Cir. 1987); *Reynolds v. Coomey,* 567 F.2d 1166, 1167 (1st Cir.1978); *Berberena v. Coler,* 753 F.2d 629, 633 (7th Cir.1985); *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1544 (9th Cir.1992); *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.). Thus, although there is no per se rule that only one attorney should try a simple § 1983 claim or only one attorney should be compensated pursuant to § 1988, the proper question is whether the application is reasonable, eliminating inefficiencies or duplications that might arise from use of more than one attorney. *A.J. v. Kierst,* 56 F.3d 849, 863–64 (8th Cir. 1995). Notably, the Eighth Circuit has stated that the use of more than one attorney is desirable and common in multiple party litigation. *Id.* at 863. Therefore, while a court should not deny attorneys' fees simply because multiple attorneys were used, "[a] court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J.,* 56 F.3d at 864; *See Johnson,* 706 F.2d at 1208.

Other courts concur. The Supreme Court has stated that a case must not be "overstaffed" and hours claimed must not be "redundant," employing the same "billing judgment" that would be applicable in the private sector. *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933. In the Fifth Circuit Court of Appeals, the court addressed an argument by two attorneys that the district court erred in reducing their fees based on the court's belief that, in several instances, the hours the attorneys submit-

---

**9.** *See* Appendix 1, "Spreadsheet comparing hours claimed by Mohrman Kaardal, P.A. vs. hours awarded," details the line-by-line itemized reductions and percentage deductions I have made with respect to Paul's attorneys' fees and costs.

ted were duplicative and repetitive. *Cooper v. Pentecost,* 77 F.3d 829, 831 (5th Cir.1996). The appellate court, however, upheld the district court's finding that some of the attorneys' hours were duplicative and repetitive, where the district court specifically listed several examples of what it considered duplicative or repetitive work and there was insufficient documentation to rebut the district court's conclusion. *Id.* at 832. Similarly, the Fourth Circuit Court of Appeals upheld a reduction of fees for multiple attorneys in a § 1983 lawsuit where the district court found that the efforts of two additional attorneys in depositions were duplicative and contrary to a duty under § 1988 to minimize expenses, and the appellate court found that the district court had the discretion to reduce attorneys' fees claims for "overstaffing." *Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 76–77 (4th Cir.1995).

I recognize that some coordination of the activities of multiple attorneys is essential in difficult cases with multiple parties. Nevertheless, three attorneys were simply not necessary in this simple § 1983 action. The Civil Rights Attorney's Fees Awards Act of 1976 was never intended to be a Robin Hood-like general transfer of wealth statute looting six figure sums for attorneys' fees from a government defendant who admitted his constitutional wrongdoing in his own deposition. Becoming a prevailing party was a sure thing when the honest and candid public servant, Sheriff Weber, readily admitted his constitutional violations in his deposition testimony before trial. Continuing to litigate this case with three lawyers, running up the hours with the speed and momentum of an out of control freight train, is the very definition of overreaching. Following Sheriff Weber's deposition, Paul's chances of losing this case rivaled the odds of the

Easter Bunny, during next February's Super Bowl, throwing the winning touchdown pass, off a triple reverse on the last play of the game, for a come from behind victory, for the St. Louis Rams (1–15 last year). Actually, I would bet on the Easter Bunny. According to one Las Vegas odds maker, the Rams' chances of winning Super Bowl 2011 are 200–1.[10]

Consequently, I hold that an additional ten percent "penalty" reduction is appropriate for overreaching by submitting a wildly over-inflated fee request, and another ten percent reduction for "block billing," "that is, billing entries that specify only the daily activities, but that do not specifically indicate how much time was spent on each individual task." *See Rural Water Sys. No. 1 v. City of Sioux Center, Iowa,* 38 F.Supp.2d 1057, 1066 (N.D.Iowa, 1999); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.* 245 F.R.D. 381, 390 (N.D.Iowa, 2007). Courts, including the Eighth Circuit Court of Appeals, have endorsed across-the-board reductions for numerous reasons. *Jensen,* 94 F.3d at 1203 (affirming the district court's 10 % across-the-board reduction for poor documentation, and affirming the district court's rejection of a 75% across-the-board reduction for limited success, not because that method was inappropriate, but because, as the district court found, the relief granted had been "major"); *See Stewart v. Gates,* 987 F.2d 1450 (9th Cir.1993) (a percentage reduction of a fee application under § 1988 is appropriate when the fee request is either very large or very small).

The first ten percent reduction to the fee claim made here, for wildly over-reaching by claiming excessive hours, falls within the Supreme Court's specific authorization for a percentage reduction.

**10.** *See,* http://www.betvega.comsuper-bowl-odds/. No odds have yet been posted on the Easter Bunny's winning touchdown pass—with or without the triple reverse.

*Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933.[11] The second ten percent reduction for "block billing" is recognized in *Houghton v. Sipco, Inc.,* 828 F.Supp. 631 (S.D.Iowa, 1993), *vacated on other grounds,* 38 F.3d 953 (8th Cir.1994). In *Houghton,* the court recognized that reductions may be made for such things as partial success, duplicative hours or hours not reasonably expended, or for "block billing"[12] or poor record-keeping. *Id.* As a result, I find an itemized reduction for hours not reasonably expended is suitable, with an additional ten percent reduction for an over-inflated fee request, and another ten percent reduction for "block billing."

### 3. Costs and expenses

Paul claims $2,430.60 as costs and expenses of this action. Weber does not object to these expenses. Under 28 U.S.C. § 1920, "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys ... should [be] included as part of the reasonable attorney's fees awarded." *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294 (8th Cir.1996) (citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 87, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 (9th Cir.1986); *Laffey v. Northwest Airlines, Inc.,* 241 U.S.App.D.C. 11, 746 F.2d 4, 30 (1984); *Northcross v. Board of Educ.,* 611 F.2d 624, 639 (6th Cir.1979)). Consequently, I find that the costs claimed are reasonable, and award Paul $2,430.60 in costs and expenses.

### C. Summary

Plaintiff Paul Dorr is a prevailing party within the meaning of 42 U.S.C. § 1988 and, therefore, is entitled to an award of some reasonable amount in attorneys' fees. I have rejected any reductions for third-party payments, and for plaintiff's limited success against only one of several defendants on only one of several claims. I have also rejected, with some reluctance, any reduction for the hourly rate claimed by Paul's counsel. However, upon line-by-line review of the fee application, I have decided that the fees claimed should be reduced for time not reasonably expended, further reduced by ten percent for "block billing," and an additional ten percent "penalty" reduction for a wildly over-inflated fee request. Therefore, I award attorneys' fees pursuant to 42 U.S.C. § 1988 to Paul as a prevailing party in this litigation in the amount of $51,744.26. I further award costs and expenses to Paul in the amount of $2,430.60.[13]

---

**11.** While courts should tolerate some minimally or modestly excessive fee requests and simply reduce them, the fee request here was so beyond the pale that I view the ten percent reduction as a necessary "penalty." This penalty is needed for lawyers who submit wildly excessive fee claims, otherwise, if a court simply reduced the fees, there would be no incentive for lawyers not to submit avaricious fee claims. I applaud counsel for exercising some billing judgment by not charging for work on jury aspects, amending complaints, and press releases. In actuality, the ten percent penalty would have been much higher but for this modest billing judgment.

**12.** I note that Paul's counsel's use of "block billing" fails to comply with Local Rule 54. 1,

which states, in relevant part: "[t]he claimed amount must be supported by an itemization that includes a detailed listing of the time claimed for each specific task and the hourly rate claimed." Instead, Paul's counsel lists numerous tasks performed in a set time period during the day, without clarifying how much time was spent on each individual task. As a result, I cannot express my independent judgment on whether the time spent on any specific task was reasonably expended. Such "block billing" falls far short of the "detailed listing of the time claimed for each specific task" requirement of Local Rule 54.1.

**13.** *See* Appendix 1, "Spreadsheet comparing hours claimed by Mohrman Kaardal, P.A. vs. hours awarded."

### III. CONCLUSION

For the above reasons, I conclude that plaintiff Paul Dorr is entitled to attorneys' fees and expenses in the amount of $54,174.86, a far cry from the $118,415.75 requested.

**IT IS SO ORDERED.**